MURRAY v. BARDEN.

(Filed March 17, 1903.)

1. LIMITATIONS OF ACTIONS—*Plea—Sufficiency—Pleadings.*

It is not sufficient merely to allege that an action is barred by the statute of limitations without stating the facts from which it could be deduced.

2. EXECUTORS AND ADMINISTRATORS—*Trusts and Trustees—Guardian and Ward—Fraud.*

An executor may purchase claims against his testator for monies received by his testator as guardian or agent, if no money received by the testator as such guardian or agent has come into his hands as executor and there is no fraud or concealment on his part.

3. EXECUTORS AND ADMINISTRATORS—*Husband and Wife—Separate Property of Wife.*

A husband may receive and receipt for money due his deceased wife, as her administrator, and such receipt is *prima facie* evidence that he was such administrator.

4. APPEALS—*Record—Transcript—References.*

An alleged order of reference not contained in the record on appeal will not be considered in support of the judgment rendered in court below.

ACTION by D. H. Murray and others against J. J. Barden, executor of will of John Barden, heard by Judge E. W. Tim-

*berlake,* at May Term, 1902, of the Superior Court of SAMPSON County.

TEUTUIM.    The plaintiffs, the children and grand-children of the testator of the defendant, brought this action to recover an amount alleged to be due to them by the testator. The allegation is that the defendant's testator in 1872 received, as guardian of a part of the plaintiffs and as agent of the others, a large amount of money bequeathed to them by the will of James Vann.    An order of reference was made in the case, and under that order a hearing was had and a report made by the referee, F. R. Cooper, as follows.: "From the pleadings, admissions and evidence in the case I find the following facts:—

1.    That by the will of James Vann (Will Book No. 2, 108, of records of Sampson County) one third of the residue of his estate was devised to the children of John Barden, thirteen in number.    That on February 6th, 1872, John Barden collected the shares of all his children except Mrs. H. Cornelia Carleton.    That her share was collected by her husband H. J. Carleton, by his attorney M. C. Richardson, under a power of attorney and was paid to her on January 31st, 1871, and that the amount paid to her as the net proceeds of such collection was $127.58, and that this was the amount due her after deducting cost of collection and attorney fees on the date of the settlement of the estate of James Vann by his executor, which was on March 2d, 1870.    That the shares of the other twelve children was collected by John Barden on February 6th, 1872, and the amount then collected for each one of the twelve was one-thirteenth of one-third of $6,510.31, which amounts to $166.93.    But from this there should be deducted the cost of collection and attorney fees, and I therefore, find that on February 6th, 1872, John Barden collected for each of his thirteen children except Mrs. H. Cornelia Carlton, the sum of one hundred and fifty dollars.

MURRAY v. BARDEN.

This finding gives to each one of the twelve more than twenty dollars more than was received by Mrs. H. Cornelia Carleton, and is fixed upon by the Referee being fair to all parties.

2. That on March 12th, 1870, John Barden qualified as guardian of five of his said children, to-wit: Virginia F. Barden, Rebecca N. Barden, Victoria Barden, Minnie D. Barden and J. J. Barden, and as such guardian collected their shares as aforesaid.

3. That under a power of attorney he collected the shares of five other of his children, to-wit: Mary C. Murray, Nancy J. Winders, Sarah C. Page, Ellen V. Carroll, Martha M. Carroll.

4. That in some way not clear to the Referee, he collected the shares of Charlotte W. (Puss) Smith and Ida C. Chesnutt. There remains the question as to which, if any, are barred by lapse of time and which, if any, have been settled with legally in whole or in part.

5. Nancy Jane Winders first married Horace Winders, who died, and then about 1867 she married W. H. Winders, and is still a married woman. Her share was collected under the power of attorney.

6. Mary C. married D. H. Murray before 1867, and her husband is still living. Her share was collected under power of attorney.

7. Caroline married Daniel Page before 1867, 20 or 25 years ago, and died leaving her husband and two children, Walter and Oscar Page. Her share was collected under the power of attorney.

8. Ellen married Jas. L. Carroll before 1867.

9. Martha married Amnie Carroll before 1867.

10. Virginia F. married R. C. Orrell about 1870, and her husband is still living.

11. Rebecca M. married Abbie Page about 1875, and died before August 25, 1897, leaving five minor children.

12.    Charlotte W. married Y. B. Smith, January 14th, 1869, and she was then eighteen years old, and her husband is still living.

13, Ward.    Victoria married Isaac Herring about 1878. She died in 1896, leaving five minor children.

14, Ward.    Minnie D. married Monroe Blanchard, about 1880, and died prior to August 29th, 1894, leaving minor children.

15.    Ida C. married E. T. Chesnutt about 1886, and her husband is still living.

16.    J. A. Powell paid to Mrs. R. L. Herring and her husband I. W. Herring on August 23rd, 1894, one hundred and fifty dollars and took a receipt signed by them, of which the following is a copy: "Whereas, on the 12th day of March, 1870, John Barden qualified as my guardian in the County of Sampson, and entered into bond as such guardian, with L. A. Powell and others as sureties thereto; and whereas, the said Barden is now dead and has never settled with me, and his estate is indebted to me in about the sum of four hundred and fifty dollars.    Now, therefore, for value received, I hereby transfer and assign to J. A. Powell said indebtedness and all my claims against the estate of the said Barden and against the sureties upon said guardian bond.

This 3d day of August, 1894.

(Signed)                    R. V. HERRING.
          .                 I. W. HERRING.

17.    On August 29th, 1894, J. A. Powell paid $150 to I. M. Blanchard, the surviving husband of Minnie D. Blanchard, who before that time had died, leaving minor children, and took from said surviving husband receipt, same as in No. 16.

(Signed)        I. M. BLANCHARD,  [Seal.]

18.    On October 15th, 1894, J. A. Powell paid to Virginia

MURRAY v. BARDEN.

F. Orrell and her husband R. C. Orrell one hundred and fifty dollars and took their receipt, same form as in No. 16.

(Signed)          VIRGINIA F. ORRELL,
                  R. C. ORRELL.

19. That on the 24th day of November, 1894, J. J. Blanchard paid to Mrs. Mary C. Murray and her husband one hundred and twenty-five dollars and took receipt in name of J. A. Powell. Same as No. 16.

(Signed)          MARY C. MURRAY.     [SEAL.]
                  D. H. MURRAY.       [SEAL.]

20. That on December 21st, 1894, J. J. Barden paid to Mrs. Charlotte W. Smith and her husband Y. B. Smith $135, and took receipt in name of J. A. Powell, same as No. 16.

(Signed)          PUSS SMITH.         [SEAL.]
                  Y. B. SMITH.        [SEAL.]

21. That on the 7th day of April, 1897, J. J. Barden paid to Ida C. Chesnutt $125, and took receipt in name of J. A. Powell, same as No. 16.

(Signed)          IDA C. CHESNUTT.    [SEAL.]
                  E. T. CHESNUTT.     [SEAL.]

22. That on the 25th day of August, 1897, J. J. Barden paid to Abner Page on account of the claim of his wife one hundred and twenty-five dollars, and took receipt in name of J. A. Powell, same as No. 16.

(Signed)   ABNER PAGE, as Administrator.   [SEAL.]

22½. That on the 9th day of November, 1895, J. J. Barden paid to Mary J. Winders $125, and took a receipt from Nancy J. Winders and her husband W. H. Winders in name of J. A. Powell, same as No. 16.

(Signed)          W. H. WILLIAMS.     [SEAL.]
                  NANCY J. WINDERS.   [SEAL.]

23. That John Barden died about February 1st, 1894, and his will was probated on February 6th, 1894, and J. J.

Barden qualified as his executor and published the "Notice to Creditors," on February 6th, 1894, in due form of law.

24.   That all the children of John Barden had knowledge of this claim against the estate of John Barden by reason of the James Vann devise, and they knew or could have known by the use of ordinary care approximately the sum due them, but they did not know to what extent their claim could be collected out of the estate of John Barden and the estate of his bondsman.

25.   That J. J. Barden did not inform the other children or issue of children of John Barden as to the real value of the John Barden estate, or as to their legal right to subject all of said estate (except year's allowance and dower right of widow) to the payment of their claim, but on the contrary he bought their claim for as small a sum as he could except the claims of Mrs. Herring, Mrs. Orrell and Mrs. Blanchard, which were bought as above set forth by J. A. Powell to protect the estate of his father L. A. Powell, who was surety on the guardian bond, and who, before the beginning of this action, agreed to transfer these claims to J. J. Barden upon being repaid.

26.   That the children and issue of children of John Barden had the same opportunity to ascertain the value of the Barden estate and the liability to their claim as did J. J. Barden, and by reasonable care and investigation they could have ascertained approximately the extent of their claims and the extent to which said estate was liable.

*Conclusions of Law.*

From the foregoing facts, the Referee finds the following conclusions of law:

1.   That the estate of John Barden is not liable to H. Cornelia Carlton for anything by reason of the Vann legacy.

2.   That the children of Mary C. Murray and Nancy Jane Winders, Virginia F. Orrell, the children of Rebecca Page,

Charlotte W. Smith, Victoria Herring, children of Minnie D. Blanchard, Ida C. Chesnutt are not barred by the statute of limitations.

3. That the statute of limitations having been pleaded, it was incumbent on the plaintiffs to show that they are not barred, and, under this rule, I find that the claims of the children of Caroline Page, to-wit, Walter Page and Oscar Page, Ellen Carroll, Martha Carroll are barred by the statute of limitations.

4. That J. A. Powell is now the owner of all the claims of Victoria Herring, or her husband and children, and of all the claims of Virginia F. Orrell against the estate of John Barden by reason of the Vann legacy.

5. That the children of Minnie D. Blanchard are entitled to recover out of the estate of John Barden one hundred and fifty dollars, with interest from February 6, 1872, because the Referee holds as a matter of law that the receipt and transfer of the share of Minnie D. after her death by her husband I. M. Blanchard did not pass the said claim, and the same is still the property of her children.

6. That J. J. Barden is the owner by purchase of the claims of Nancy J. Winders, Mary C. Murray, Charlotte W. (Puss) Smith, Ida C. Chesnutt, and they are not entitled to recover anything from the said estate by reason of the Vann legacy.

7. That J. J. Barden is the owner by purchase of the claim of the children of Rebecca N. Page, but the only evidence that Abner Page, who signed the receipt and transfer, is the administrator of Rebecca Page, his wife, is his signing the receipt as such, and there being no evidence to the contrary, the referee holds that it is *prima facie* proof, and that said children of Rebecca Page are not entitled to recover anything by reason of the Vann legacy.

8. That the children of Daniel Page, Ellen Carroll, Martha

Carroll, are not entitled to recover anything by reason of the Vann legacy." (Signed by referee).

The plaintiffs filed numerous exceptions to the report, but the court confirmed the same in all respects and entered judgment as appears of record. To this confirmation of the report and judgment the plaintiffs filed exceptions and appealed.

*J. D. Kerr* and *Stevens, Beasley & Weeks,* for the plaintiffs.

*Faison & Grady* and *Womack & Hayes,* for the defendants.

MONTGOMERY, J., (after stating the facts) : The plaintiff's contention raised by several of their exceptions that the defendant was a trustee of an express trust because of the fact that his testator had received the money of the plaintiffs as their guardian and agent and therefore that he had no right to purchase the claims of the plaintiffs arising out of the Vann legacy except for the full amount of those claims, principal and interest, and also that he cannot set up the Statute of Limitations against those claims, cannot be sustained. There is no evidence in the case that one cent of the money, received by the testator from the Vann legacy, ever went into the defendant's hands. In fact, the evidence is to the contrary. The only estate of the testator at the time of his death was real estate in the County of Sampson, and three hundred and fifty dollars worth of personal property, the latter being subject to the year's support. We are of the opinion however that the defendant failed in his attempt to plead the Statute of Limitations. The language of that plea was as follows: "That outside of the debts held and owned by said J. A. Powell, which have been duly presented and accepted by the defendant executor, this defendant alleges and pleads notice as aforesaid, and the Statute of Limitations of three, seven and ten years in bar of the recovery of said plaintiffs or any of them, and he prays judgment that

said Powell's claim be admitted, and no other, and that he recover costs and expenses of the plaintiffs in this action." That was but the statement of a conclusion of law, and not the facts from which it could be deduced.

In *Turner v. Shuffler*, 108 N. C., 642, the language of the plea was in these words: "They plead the statutes of limitations of ten, seven, six, and three years as prescribed in The Code, to all said claims and aver that they are unable to plead the same more definitely to each and all said claims," and the court there said, "This is clearly bad and insufficient pleading." Along the same line, reference is made to the case of *Heyer v. Rivenbark*, 128 N. C., 270; *Lassiter v. Roper*, 114 N. C., 17. There was nothing either in the complaint or answer which could in any manner aid the insufficiency of the plea. The plaintiffs' exception therefore to the referee's conclusion of law, No. 3, ought to have been sustained.

The defendant J. J. Barden not having any trust finds in his hands arising from the Vann legacy had the clear right to purchase the interests of the plaintiffs, his sisters, in the Vann legacy, unless he practiced some fraud upon them in the purchase; and under the head of fraud, would be the withholding of any information from them as to the value of their interests, which information had come to him by virtue of his office as executor. The plaintiffs introduced no evidence before the referee tending to show that the defendant in any way had overreached the plaintiffs. They were as well acquainted with the lands of the testator as was the defendant and while the defendant as executor made no returns of the estate, he testified that he had received no money by virtue of his office as executor or in any other capacity from his father's estate, and that the whole of the personal property was worth no more than three hundred and fifty dollars, and that his mother, the testator's widow, was entitled to her year's support out of that.

The plaintiffs' exception to the 7th conclusion of law of the referee cannot be sustained. The interest of Rebecca Page in the Vann legacy, being personal property became the property of her husband Abner Page when she died, and his receipt to the defendant J. J. Barden for the amount of Mrs. Page's claim was valid. She had received the money in her life time. The signature of Abner Page as administrator of his wife was *prima facie* proof that he was such administrator, and there was no evidence to the contrary.

The other exceptions to the plaintiff, except those for the judgment itself, are without merit. The plaintiffs' exception to the judgment, because it contained a decree that Daniel Page and Walter and Oscar Page had assigned their claims to J. J. Barden, the defendant, is founded on a misapprehension. Neither the referee's report nor the judgment contains any such statement. In this connection however it may be well to say that the plaintiffs failed to file any exception to the 8th conclusion of law and affirmed by the judgment, to-wit, "That the children of Daniel Page, Ellen Carroll, Martha Carroll, are not entitled to recover anything by reason of the Vann legacy."

The third conclusion of law as affirmed by the judgment, being erroneous as we have pointed out, will cure that failure however, as the 8th conclusion of law followed the third as a necessary consequence. That part of the judgment in which the lands of the testator were ordered to be sold to pay the debts therein named, seems to be erroneous. As the case appears to us it was no part of the object of the action to have a sale of the lands of the testator. It was simply an action for the recovery of the amount due to the plaintiffs on account of the Vann legacy.

The counsel of the defendant moved for a certiorari to have sent up by the clerk of the Superior Court of Sampson County the order of reference in this case. The notice required in

such cases had not been given to the other side and there was
no motion to shorten the time of notice, and it was therefore
declined.    During the argument, the counsel of the defendant
stated that that order of reference, made by consent, contained
matters which would make the judgment regular.    But the
order is not before us, and we must follow the record.    If,
when the case goes back, that order of reference should be
full enough to justify the judgment, the defendant can pur-
sue such course, as he may be advised, to get the benefit of it.
    Error.